IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EMI APRIL MUSIC INC., ET AL, | § § § | |
| Plaintiffs, | § | |
| v. | § § | CIVIL ACTION NO. 3:08-CV-660-M |
| JET RUMEURS, INC. and CHARLES J. POTEET, | § § § § | |
| Defendants. | | |

## MEMORANDUM OPINION AND JUDGMENT

Before the Court is Plaintiffs' Motion for Entry of Judgment by Default [Docket Entry # 9]. This action for copyright infringement commenced on April 16, 2008, and Defendants were properly served with the summons and Complaint on July 18, 2008. Defendants have failed to respond or otherwise appear in this lawsuit. As a result, the Clerk made an entry of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure on September 26, 2008. Having considered the Motion for Entry of Judgment by Default, the Court finds that it should be **GRANTED.**

### BACKGROUND

As the Defendants in this matter have failed to appear, the Court accepts the facts alleged by the Plaintiffs in the Complaint and supporting affidavits as true.[1] Defendant Charles J. Poteet is the principal stockholder, director and president of Jet Rumeurs, Inc. Defendant Jet Rumeurs, Inc. is a Texas corporation that owns and operates "Jet Set," a place for public entertainment and refreshment located in Dallas, Texas.

The American Society of Composers, Authors and Publishers ("ASCAP") is a national

---

[1] *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

copyright licensing organization used by composers (including Plaintiffs) to license their work. In June 1995, an ASCAP representative contacted Defendant Poteet and offered him a license to perform copyrighted works at Jet Set, and informed him that any unauthorized performance could have legal consequences. Over the course of the next twelve years, ASCAP repeatedly offered the Defendants a license to perform copyrighted works within the ASCAP repertory, and warned of the legal consequences of performing such works without a license. ASCAP representatives sent letters, called and left messages on Defendant Poteet's answering machine or with his agents, and visited Jet Set in person. On more than one occasion ASCAP representatives even offered Defendant Poteet a license in person, but were refused every time.

On September 1, 2007, an ASCAP investigator, Maria Kessler-Reaves, went to Jet Set and observed six songs in the ASCAP repertory being performed publicly at Jet Set.[2] The Plaintiffs in this case are the copyright owners of each of the songs performed and have not licensed the Defendants to perform them. Plaintiffs now seek entry of a default judgment against Defendants, including an injunction against further infringing behavior, statutory damages for the copyright infringement, and attorneys' fees. The Court hereby **GRANTS** Plaintiffs' Motion for Entry of Judgment by Default in all respects.

## ANALYSIS

A. Default Judgment Standard

Federal Rule of Civil Procedure Rule 55(a) provides that a default judgment is proper when a party against whom a judgment for affirmative relief is sought has failed to plead or

---

[2] The songs included: *Let Her Cry,* the copyright of which is owned by EMI April Music, Inc., and Monica's Reluctance to Lob; *Beautiful Girls*, owned by Van Halen Music; *1999* owned by Controversy Music; *Lonely No More*, owned by U Rule Music and EMI April Music, Inc.; *Electric Boogie aka Electric Slide*, owned by Tafari Music, Inc.; and *Funky Cold Medina*, owned by Varry White Music, Ex VW, Inc., and Loc'd Out Music.

otherwise defend, and that failure is shown by affidavit or otherwise.[3]  Under Rule 55(b), the court "may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to: 1) conduct an accounting; 2) determine the amount of damages; 3) establish the truth of any allegation by evidence; or 4) investigate any other matter."  However, an evidentiary hearing may not be necessary when the plaintiff's motion is accompanied by a detailed affidavit and documentary evidence.[4]  Furthermore, where the amount of damages and/or costs can be determined with certainty by reference to the pleadings and supporting documents, and where a hearing would not otherwise be beneficial, a hearing is not required.[5]

B. Copyright Infringement

The owner of the copyright in a musical composition has the exclusive right to perform the copyrighted musical composition publicly, and to authorize others to do the same.[6]  A person who violates this exclusive right is a copyright infringer.[7]  Plaintiffs have alleged, and this Court accepts as true, each of the following requisite elements for an action of copyright infringement:

(1) the originality and authorship of the compositions involved;

(2) compliance with all formalities required to secure a copyright under Title 17 of the United States Code;

(3) that the plaintiffs are the proprietors of the copyrights of the composition involved in this action;

(4) that the compositions were performed publicly; and

(5) that the defendants had not received permission from any of the plaintiffs or their representatives for such performance.[8]

---

[3] FED. R. CIV. P. 55(a) (2008).
[4] FED. R. CIV. P. 55(b) (2008); *James v. Frame,* 6 F.3d 307, 310 (5th Cir. 1993).
[5] *James*, 6 F.3d at 310.
[6] 17 U.S.C. § 106(4) (2005).
[7] 17 U.S.C. § 501(a) (2005).
[8] *See Swallow Turn Music v. Wilson,* 831 F. Supp. 575, 577 (E.D. Tex. 1993) (citing *Fermata Int'l Melodies, Inc. v. Champions Golf Club, Inc.*, 712 F. Supp. 1257, 1259 (S.D. Tex. 1989), *aff'd*, 915 F.2d 1567, 1567 (5th Cir. 1990)).

1. *Ownership and registration of copyrights*

A federal copyright registration certificate provides prima facia evidence of the first three elements.[9] Though Plaintiffs in this case have not provided a copy of the actual registration certificates for each song that was illegally performed from September 1-2, 2007, they have provided the declaration of Douglas Jones (the "Jones Declaration"), a litigation administrator and custodian of ASCAP's general licensing business records. Based on the Jones Declaration, which states that "according to copyright registration certificates filed with the records of ASCAP's legal counsel, the respective plaintiffs own the copyrights to these six songs," and also on Appendix A to Plaintiffs' Complaint, which lists the certificate of registration number for each song at issue, the Court is satisfied that Plaintiffs have sufficiently supported their allegation as to the first three elements, and have therefore proven ownership and registration of the copyrights in question.

2. *Public performance*

Attached to the Jones Declaration is the report from Maria Kessler-Reaves, the ASCAP investigator, which states that she heard each of the six songs in question performed between 9:10P.M. on September 1 and 12:49A.M. on September 2, 2007. Because the investigator's statements are uncontroverted, the Court finds that they constitute sufficient evidence of the fourth requisite element.

3. *Lack of permission*

Plaintiffs allege that they have never authorized Defendants to perform their copyrighted musical compositions. The Jones Declaration supports this assertion, as ASCAP also denies having granted Defendants a license to perform the songs at issue. By virtue of their default,

---

[9] *Fermata Int'l Melodies, Inc.,* 712 F. Supp. at 1259.

Defendants have admitted that the factual allegations in the Complaint are true.[11]  Therefore, the uncontroverted evidence shows that Defendants did not have permission to perform the six songs at issue in September of 2007.

C. Liability for Infringements

Liability for copyright infringement falls not only on the person who actually performed the copyright music, but also on those who: (1) had the right and ability to control the infringing activity; and (2) had a direct financial interest in that activity.[12]  Plaintiffs allege that Defendant Jet Rumeurs, Inc. owns, controls, and operates Jet Set, where the songs in question were publicly performed "for the entertainment and amusement of the patrons attending said premises," and where "Defendants threaten to continue such infringing performances."  In failing to answer the Complaint, Defendant Jet Rumeurs, Inc. has admitted these factual allegations.[13]  The Court therefore finds that Defendant Jet Rumeurs, Inc. had the right and ability to control the infringing activity at Jet Set, and had a direct financial interest in the activity. Thus, Defendant Jet Rumeurs, Inc. is liable for the copyright infringements that occurred at Jet Set from September 1-2, 2007.

Plaintiffs further allege that Defendant Poteet was at all relevant times the managing owner of Jet Rumeurs, Inc., a corporation organized under the laws of Texas.  Plaintiffs allege that the illegal performances were committed with Defendant Poteet's "active assistance, cooperation, acquiescence and procurement," and that Defendant Poteet "derives financial benefit therefrom."  In failing to answer the Complaint, Defendant Poteet has also admitted these

---

[11] *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).
[12] *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 513 (4th Cir. 2002); *Crabshaw Music v. K-Bob's of El Paso, Inc.*, 744 F. Supp. 763, 767-68 (W.D. Tex. 1990).
[13] *See Nishimatsu Constr. Co.*, *515* F.2d at 1206.

5

allegations.[14] The Court finds that, as the owner of Jet Rumeurs, Inc., Defendant Poteet had the authority to control Jet Rumeurs, Inc.'s business and affairs, including managing the infringing activities at Jet Set.[15] Defendant Poteet is also entitled to participate in the profits of the business and therefore had a direct financial interest in the infringing activity.[16] Accordingly, the Court finds Defendant Poteet vicariously liable for the copyright infringement that occurred at Jet Set from September 1-2, 2007.

D. <u>Remedies</u>

1. *Injunctive relief*

The Copyright Act authorizes the Court to grant "temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."[17] When infringement occurs, the copyright owner is entitled to an injunction prohibiting further infringing performances.[18] The Court recognizes, as other courts have, that the Plaintiffs here represent the interests of all ASCAP members whose music could be infringed by Defendants, and therefore finds that injunctive relief which protects all music in the ASCAP repertory is appropriate.[19]

The Court, finding no other adequate remedy at law and that continuing infringement and resulting injury are very likely in cases such as this, hereby permanently **ENJOINS** Defendants Jet Rumeurs, Inc. and Charles J. Poteet and their agents, servants, employees, attorneys, and any

---

[14] *See id.*
[15] *See* TEX. REV. CIV. STAT. ANN. Art. 1528n § 2.12. (2008) (stating "the business and affairs of a limited liability company shall be managed under the direction of, the manager or managers of the limited liability company).
[16] *See* TEX. BUS. ORGS. CODE ANN. § 101.201 (Vernon 2006) (stating the profits and losses of a limited liability company shall be allocated to each member of the company).
[17] 17 U.S.C. § 502(a) (2005).
[18] *See, e.g., Twentieth Century Music Corp. v. Frith*, 645 F.2d 6,7 (5th Cir. 1981); *Canopy Music, Inc. v. Harbor Cities Broad., Inc.*, 950 F. Supp. 913, 916 (E.D. Wis. 1997).
[19] *See e.g., Canopy Music, Inc.,* 950 F. Supp. at 916 (barring radio station from broadcasting any musical compositions within the ASCAP repertory even though ASCAP was not a party to the suit because the plaintiff copyright holders represented the interests of all ASCAP members); *Swallow Turn Music*, 831 F. Supp. at 581 (explaining that, especially where a copyright violation is "willful," it is appropriate to enjoin defendant from performing *any* ASCAP member's music without permission).

others in active participation with them who receive notice of this Judgment from presenting public performances of the copyrighted musical compositions in the ASCAP repertory, including those belonging to the Plaintiffs, without permission from the copyright owner or a license from ASCAP obtained in advance of the performance, at or through any establishment or business owned, managed, controlled, or operated, in whole or in part, directly or indirectly, by Defendants.

    2. *Monetary damages*

A copyright owner is entitled to recover from an infringer either actual damages or statutory damages.[20] Statutory damages may be awarded in an amount between $750 and $30,000 per infringement, as the court deems just.[21] Where an infringement is committed willfully, the court may increase the award of statutory damages up to $150,000 per infringement.[22] The Copyright Act does not define the term "willfully." According to the Fifth Circuit, a defendant acts "willfully" within the meaning of § 504(c)(2), if he "knows his actions constitute an infringement" even though the actions were not malicious.[23]

The Court has wide discretion to award damages within the statutory limits.[24] The Court is guided, however, by the mantra that complying with the copyright laws should be less costly than violating them.[25] Thus, statutory damages should be awarded in an amount sufficient to deter future copyright infringement.[26] In light of the deterrent purpose of statutory damages, courts frequently award statutory damages in amounts that are between two and three times the

---

[20] 17 U.S.C. § 504(a) (2005) ("an infringer of copyright is liable for either (1) the copyright owner's actual damages and any additional profits of the infringer . . . or (2) statutory damages").
[21] 17 U.S.C. § 504(c)(1) (2005).
[22] 17 U.S.C. § 504(c)(2) (2005).
[23] *Broad. Music, Inc. v Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir. 1988).
[24] *See F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 231-32 (1952).
[25] *See Wildlife Express Corp. v. Carol Wright Sales,* 18 F.3d 502, 514 (7th Cir. 1994).
[26] *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,* 886 F.2d 1545, 1554 (9th Cir. 1989), cert. denied, 494 U.S. 1017 (1990).

license fee refused by the defendant.[27]

Where a plaintiff seeks statutory damages in excess of the $750 minimum, the infringer has a Seventh Amendment right to a jury determination of the amount of statutory damages.[28] Plaintiffs seek statutory damages in the amount of $3,500 for each of the six counts of infringement alleged. By failing to serve and file a demand for jury trial, the Defendants have waived their right to a jury determination of statutory damages.[29] The Court shall therefore determine the amount of statutory damages appropriate in this case. The ASCAP fees for a license covering Defendants' performances of the ASCAP songs from January 1, 1996 through September 2008 would have been approximately $12,421.46.[30] Therefore, the Court finds that Plaintiffs' request for $21,000 in total statutory damages is not excessive (especially in light of the possible range of damages), and is also sufficient to deter future copyright violations.

The Court also finds that Defendants' infringement was committed willfully. ASCAP agents spoke directly with Defendant Poteet on more than one occasion, offering him a license and informing him that the unauthorized performances of Plaintiffs' music constituted a violation of federal copyright laws. For more than a decade, Defendant Poteet refused licenses offered in person, by phone and by mail (including over eighteen letters). Defendants therefore knew that performance of the copyrighted songs at Jet Set was a violation of federal copyright law, but nevertheless persisted in their conduct. Such knowing violation of copyright law is properly classified as "willful" infringement. This Court has a duty under the relevant case law to put Defendants "on notice that it costs less to obey the copyright laws than to violate them," so

---

[27] *See e.g., Swallow Turn Music*, 831 F. Supp. at 581 (finding an award of $2,500 per infringement for a total award of $17,500 sufficient to deter, and reasonable, given the penalty range of up to $700,000); *Fermata Int'l Melodies, Inc.*, 712 F. Supp. at 1264 (awarding $8,000 when $2,400 in license fees was owed).
[28] *Feltner v. Colombia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998).
[29] FED. R. CIV. P. 38(d) (2008).
[30] Plaintiff's Appendix, Jones Declaration at 5.

Defendants will not "be able to sneer in the face of copyright owners and copyright laws"[31] The willful nature of the Defendants' actions renders an award of statutory damages in the amount of $3,500 per copyright infringement reasonable and sufficient to deter future infringement. The Court hereby **ORDERS** Defendants to pay to Plaintiffs damages in the total amount of $21,000, or $3,500 per copyright infringement.

### 3. *Costs and attorneys' fees*

The Copyright Act provides that, at its discretion, a court may award costs and reasonable attorneys' fees to the prevailing party.[32] Fee awards in copyright infringement cases "are the rule rather than the exception and should be awarded routinely."[33] The court's discretion is guided by factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."[34] Although a finding of willful infringement is not necessary to support an award of attorneys' fees, the defendants' willful infringement may be considered by the court.[35]

In considering these factors, the Court finds no reason why this case should be governed by the exception rather than the rule. The Defendants refused to obtain a license for musical compilations publicly performed. The Court hereby **ORDERS** Defendants to pay reasonable and necessary attorneys' fees, which the Court finds, based on the affidavit of Slates C. Veazey, are $3,735.00, plus all taxable court costs. It is further **ORDERED** that Defendants pay post-judgment interest on all amounts awarded in this judgment pursuant to 28 U.S.C. § 1961, in the amount of 0.93% per annum, compounded annually.

---

[31] *Int'l Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 383 (7th Cir. 1988).
[32] 17 U.S.C. § 505 (2005).
[33] *Positive Black Talk, Inc. v. Cash Money Records, Inc.,* 394 F.3d 357, 381 (5th Cir. 2004).
[34] *See id.* (citation omitted).
[35] *See Naghi v. Europe's Finest, Inc.,* No. 03-30102, 2004 WL 2278508, at *2 (5th Cir. Oct. 1, 2004).

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED**:

1. Defendants Jet Rumeurs, Inc. and Poteet and their agents, servants, employees, attorneys, and any others in active participation with them who receive notice of this Judgment are permanently enjoined and restrained from presenting public performances of copyrighted musical compositions in the ASCAP repertory, including those belonging to Plaintiffs, without permission from the copyright owner or a license from ASCAP obtained in advance of the performance, at or through any establishment or business owned, managed, controlled, or operated, in whole or in part, directly or indirectly, by the Defendants;

2. Plaintiffs are awarded $21,000.00 in statutory damages, jointly and severally, from Defendants;

3. Plaintiffs are awarded attorneys' fees in the amount of $3,735.00, jointly and severally, from Defendants;

4. Plaintiffs are awarded post-judgment interest pursuant to 28 U.S.C. § 1961, in the amount of 0.93% per annum, compounded annually, on all amounts awarded, for which Defendants are jointly and severally liable.

**SO ORDERED** this 5th day of December, 2008.

_[signature: Barbara M. G. Lynn]_
**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**